UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANTHONY H. BAPTISTE,

                Plaintiff,

         -against-                              **MEMORANDUM AND ORDER**
                                                          19-CV-42 (RRM) (VMS)

SUFFOLK COUNTY AS A MUNICIPALITY, *et al.*,

                Defendants.
------------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

       On January 22, 2019, *pro se* plaintiff Anthony Baptiste, incarcerated at Clinton Correctional Facility, commenced this action against Suffolk County, alleging deliberate indifference to medical needs under 42 U.S.C. § 1983 during his detention at Yaphank Correctional Facility ("Yaphank"), a jail located in Suffolk County. (Compl. (Doc. No. 1).) By Order dated November 20, 2019, the Court *sua sponte* dismissed his complaint in its entirety for failure to state a claim, but granted Baptiste leave to amend. On December 12, 2019, Baptiste filed an amended complaint. (Am. Compl. (Doc. No. 12).) For the reasons set forth below, Baptiste's claims against Suffolk County Department of Health, Suffolk County Correctional Facility, Suffolk County Correctional Facility Medical Department, Suffolk County Sheriff Errol Toulon Jr., former Suffolk County Sheriff Vincent DeMarco and Alice Butkos are dismissed but the action may proceed against the remaining defendants named in the amended complaint.

## BACKGROUND

       The following facts are drawn from the amended complaint and attached documents and are assumed to be true for the purpose of this Memorandum and Order.

       Baptise, a practical nurse and pre-trial detainee, was arrested on February 24, 2016. (Am. Compl. at 3.) That day, as part of his intake, Baptiste saw Nurse Practitioner Alice Butkos, who

1

encouraged him to exercise and lose weight. (*Id*.) In late April 2016, Baptiste injured his knee while exercising at Yaphank. (*Id*.) Baptiste alleges he "could not walk, and when I could walk I was in excruciating pain." (*Id*.). He submitted "multiple requests to see a medical provider," but was not seen by Dr. Barun Jaiswal until June 9, 2016, nearly six weeks after he was injured. (*Id*.). Jaiswal prescribed an ace bandage and directed him to follow-up in two weeks if there was no improvement. (*Id.* at 3, 16–18).

After two weeks, Baptiste's knee "was the size of a softball" and he was still in "severe pain," so Baptiste notified nurses and corrections officers and submitted repeated requests for medical treatment. (*Id*. at 3.) He received no response to his requests for medical treatment. (*Id*.) When he stated that he wanted to file a grievance concerning the lack of response, he was told by corrections officers that there were no grievance forms in the housing area. (*Id*.).

On July 7, 2016, Baptiste saw Nurse Jane Doe who noted that there was "no swelling," in contradiction of Jaiswal's diagnoses, and prescribed an ace bandage and ice packs three times per day for three days. (*Id.* at 3–4, 20–21). Baptiste alleges that the Jane Doe nurses who visited his housing unit "refused to provide … ice packs," stating that "it was the policy of the Jail not to give ice packs to the inmates in the housing area." (*Id.* at 4). The nurses advised Baptiste to submit a medical request in order to receive his prescribed ice packs, which he did "diligently." (*Id*.)

Baptiste was next seen by Dr. Jaiswal on August 18, 2016. (*Id. at* 4, 23–27.) Dr. Jaiswal noted that Baptiste's knee was still swollen. (*Id*.) Dr. Jaiswal prescribed a knee brace for one month and a return visit in two weeks if needed but did not prescribe any diagnostic tests such as an x-ray or MRI. (*Id*.). Again, the nurses on Baptiste's housing unit failed to provide the knee brace despite his requests and his requests for subsequent medical treatment were ignored. (*Id.*

2

at 4–5). Baptiste did not receive the prescribed knee brace until he was transferred to Downstate Correctional Facility in January 2018. (*Id*. at 5.)

Baptiste alleges that his symptoms caused him pain and limited his mobility, which in turn inhibited his ability to do legal research, visit with family and friends, or attend bible study. (*Id*. at 5). He asserts that he is still reliant on a knee brace to "alleviate the pain, which may be a[] direct effect of the lack of medical care from the Suffolk County Correctional Facility Medical Staff." (*Id.*).

The amended complaint names as defendants not only Suffolk County, but also several of its agencies: the Suffolk County Department of Health, Suffolk County Correctional Facility, and Suffolk County Correctional Facility Medical Department. In addition, the pleading specifically names four current or former Suffolk County employees – Suffolk County Sheriff Errol Toulon, Jr.; former Suffolk County Sheriff Vincent DeMarco; Nurse Practitioner Alce Butkos; and Dr. Baron Jaiswal, M.D. – and several Doe Defendants – unnamed medical providers, "Correctional Nurses," and corrections officers. (*Id.* at 1.) Baptiste alleges that defendants were deliberately indifferent to his "egregiously inflamed knee" and "extreme pain" in violation of the Due Process clause of the Fourteenth Amendment, and that defendant corrections officers, doctor, and nurses knew of but disregarded his need for medical care. (*Id.* at 6). He also alleges that his injuries were caused by a municipal policy or custom, as demonstrated by the nurses who informed him that he was not allowed his ice packs due to policy. (*Id.*) He seeks $1,250,000.00 in damages for "the lack of treatment which led to … continuing pain and suffering." (*Id.*).

## STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA") requires a district court to screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the

complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (noting that under PLRA, *sua sponte* dismissal of frivolous prisoner complaints is not only permitted, but mandatory). Similarly, pursuant to the *in forma pauperis* statute, a court must dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Courts must read *pro se* complaints with "special solicitude" and interpret them to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–76 (2d Cir. 2006) (internal quotation marks omitted) (citations omitted). Still, a complaint must plead enough facts, "accepted as true, to state a claim to relief that is plausible on its face." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citation omitted).

## DISCUSSION

### I. Personal Involvement

To maintain a § 1983 action, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citation omitted). Second, "the conduct

4

complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id*. In addition, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). "[P]ersonal involvement for these purposes ... mean[s] direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient, and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates." *Kee v. Hasty*, No. 01-CV-2123 (KMW) (DF), 2004 WL 807071, at *12 (S.D.N.Y. Apr. 14, 2004) (internal citations omitted).

Baptiste names Suffolk County Sherriff Errol D. Toulon, Jr., and former Suffolk County Sheriff Vincent DeMarco in the caption of the amended complaint but makes no factual allegations about them. Additionally, Baptiste names Alice Butkos, Nurse Practitioner, as a defendant. Butkos is the intake nurse who assessed Baptiste's medical condition on February 24, 2016, when he arrived at the jail and allegedly "encouraged [him] to exercise and lose weight." (Am. Compl. at 2). Baptiste sets forth no additional facts regarding Butkos's involvement in any alleged constitutional violation. Accordingly, the amended complaint is dismissed with regards to Botkos, DeMarco, and Toulon, Jr.

## II.     Deliberate Indifference

To state a deliberate indifference to medical needs claim under the Fourteenth Amendment, a plaintiff must plead facts that would tend to show "(1) that the alleged deprivation

5

'pose[d] an unreasonable risk of serious damage to his health,' and (2) 'that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed.'" *Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020) (summary order) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 30, 35 (2d Cir. 2017)).

Baptiste alleges that he suffered from excruciating pain and swelling in his knee but was denied any medical care for this condition for more than six weeks despite submitting frequent medical requests. After his first visit to Dr. Jaiswal, where he was prescribed an ace bandage and told to return in two weeks if his symptoms did not improve, Baptiste made repeated requests for medical attention to various unnamed corrections officers, which went unheeded despite his being in severe pain. Thereafter, Baptise alleges that he was denied the ice packs that nurse Jane Doe prescribed for him. In August 2016, a full four months after his injury, Baptiste was still suffering from pain and swelling, but Dr. Jaiswal ordered no diagnostic imaging and merely prescribed Baptiste with a knee brace, which he was again unable to access. Baptiste did not receive his prescribed knee brace until January 2018, sixteen months later, when he was transferred to a state correctional facility. He alleges that he still relies on a knee brace and that the denial of care caused a chronic injury to his knee.

These allegations may be sufficient to state a deliberate indifference to medical needs claim against Dr. Jaiswal, and the unnamed medical personnel and corrections officers, and so they *survive sua* sponte review. *See, e.g., Hall v. Artuz*, 954 F. Supp. 90, 93 (S.D.N.Y. 1997) (denying summary judgment for defendants on deliberate indifference to medical needs claim brought under the Eighth Amendment where evidence suggested defendants were aware plaintiff

was denied a prescribed knee brace for four months, leading to difficulty walking or climbing stairs).

### III. Municipal Liability

Under § 1983, a municipality may only be liable for the violation of a person's civil rights if the moving force behind that violation was an official policy or custom of the municipality. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690–94 (1978). The Second Circuit has established a two-prong test for *Monell* claims. First, the plaintiff must allege "the existence of a municipal policy or custom" that caused his injuries. *See Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (citation omitted), *cert. denied*, 480 U.S. 916 (1987). Second, the plaintiff must establish a causal connection between the policy and the alleged civil rights violation. *See id.*

> To satisfy the first prong of the test, a plaintiff must allege the existence of:
>
> (1) a formal policy which is officially endorsed by the municipality, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-484 … [1986]; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials, *see Monell*, U.S. at 690-91; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *See City of Canton v. Harris*, 489 U.S. 378, 388 … (1989).

*Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).

Baptiste alleges that he was systematically denied his prescribed ice packs, despite making multiple requests to nurses in his housing unit, and that the unnamed nurses uniformly informed him he could not have his ice packs because the jail had a policy of not providing ice packs to the inmates in the housing area. He also alleges that those nurses encouraged him to submit medical requests in order to secure access to his prescribed ice packs. These allegations

7

are sufficient to satisfy the first prong of his *Monell* claim because they plausibly set forth a widespread custom or practice of denying inmates access to prescribed ice packs, from which the constructive knowledge of policy-making officials could be inferred. Further, Baptiste has set forth facts indicating that his painful condition persisted after he was denied these ice packs, and his knee was still swollen in August 2016. These facts plausibly set forth a causal connection between the alleged policy and the resulting harm. Accordingly, Baptiste's *Monell* claim against the County of Suffolk survives *sua sponte* review.

However, the municipal agencies named as defendants in the amended complaint – the Suffolk County Department of Health, the Suffolk County Correctional Facility, and its medical department – are all administrative arms of Suffolk County and therefore lack the capacity to be sued. *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). "[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued."). Accordingly, the amended complaint is dismissed as against defendants Suffolk County Department of Health, Suffolk County Correctional Facility, and Suffolk County Correctional Facility (medical department).

## CONCLUSION

This action is *sua sponte* dismissed against Suffolk County Department of Health, Suffolk County Correctional Facility, Suffolk County Correctional Facility Medical Department, Suffolk County Sheriff Errol Toulon, Jr., former Suffolk County Sheriff Vincent DeMarco, and Alice Butkos for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). The Clerk of Court is respectfully requested to amend the caption to reflect their dismissal.

Plaintiff's § 1983 claim may proceed against defendants Suffolk County and Dr. Jaiswal, as well as the Doe medical personnel and corrections officers listed in the caption. The Clerk of Court is directed to issue summonses to Suffolk County and Dr. Jaiswal and the United States Marshals Service is directed to serve the Amended Complaint and the summonses on these defendants. The Clerk of Court is further directed to serve a copy of the Amended Complaint together with this Order on the Suffolk County Attorney.

The Court refers this matter to Magistrate Judge Scanlon for identification of the remaining defendants and for pretrial supervision. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to the *pro se* plaintiff and to note the mailing on the docket sheet.

SO ORDERED.

Dated: Brooklyn, New York
      June 24, 2021

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge